[Civ. No. 2079.   Third Appellate District.—February 19, 1920.]

WALTER H. FISHER, Appellant, v. EXCHANGE NA-
TIONAL BANK OF LONG BEACH (a Corporation),
Respondent.

[1] PLEDGE — SECURITY FOR PAYMENT OF SEVERAL OBLIGATIONS —
MATURITY OF PORTION—RIGHT TO SELL WHOLE OF SECURITY—
AGREEMENT OF PARTIES.—Where a pledgor, in depositing certain
stock as collateral security for the payment of a given liability, or
any other liability to the pledgee, due or to become due, or that
may thereafter be contracted, expressly agrees that on the non-
payment of any of said liabilities the pledgee may sell "the whole
or any part" of such securities and apply the proceeds "to any or
either or all of said liabilities" as the pledgee shall deem proper,
the whole of such securities may be sold to satisfy all liabilities
existing in favor of the pledgee and against the pledgor, although
only a portion thereof have matured.

APPEAL from a judgment of the Superior Court of
Los Angeles County.   Charles Monroe, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Oliver O. Clark, George M. Pierson and Claud B. An-
drews for Appellant.

Eugene C. Campbell for Respondent.

BURNETT, J.—The action was to recover damages for
the alleged conversion of oil stock, and the appeal is from
a judgment of nonsuit in favor of defendant.   On March
16, 1914, plaintiff borrowed seven thousand seven hundred
dollars from defendant, and executed his promissory note
therefor payable ninety days after date, with interest at
the rate of eight per cent per annum, payable quarterly.
To secure the payment of said liability, plaintiff pledged one
hundred shares of oil stock and executed a contract of pledge,
which is a part of said promissory note.   The material por-
tions of said contract of pledge are as follows: "I hereby
deposit with said bank as collateral security for the payment

1.   Right of pledgee to sell debt or debt and collateral given to
secure debt, note, Ann. Cas. 1916B, 237.

of this or any other liability or liabilities of mine to said bank, due or to become due, or that may be hereafter contracted, the following property, viz.: 95 shares United Petr. Co., 5 shares Union Oil Co. . . . with this condition, viz.: . . . and on the nonperformance of this promise, or on the nonpayment of any liability or liabilities above mentioned to said bank, its president or cashier . . . is and are hereby given full power and authority to sell the whole or any part of the above named securities . . . at public or private sale, at any time or times hereafter, without any demand or advertisement or notice, such demand, advertisement and notice being hereby expressly waived . . . and after deducting all legal or other costs or expenses for collection, sale or delivery, may apply the residue of the proceeds of such collection, sale or sales, to pay any or either or all of said liabilities as said Exchange National Bank of Long Beach . . . shall deem proper, returning the overplus to the undersigned; and the undersigned agrees to pay the holder thereof any deficiency upon demand. The maker and indorsers of this note hereby waive demand, presentment for payment, protest and notice of protest.'' On January 26, 1916, defendant collected a dividend of $150 on said stock, which it credited on the principal of said note, thereby reducing the principal to $7,550. Only a small part of the interest was paid, and from time to time as said interest accrued plaintiff gave to defendant promissory notes to cover it. The first one, payable on demand was given on August 19, 1914; the second, payable on March 16th, after date, was given on March 5, 1915; the third, payable on demand, was given on July 8, 1915; the fourth, payable on demand, was given on October 6, 1915; the fifth, payable on demand, was given on December 6, 1915; the sixth, payable ninety days after date, was given on May 9, 1916. On August 7, 1916, plaintiff executed a new note dated June 16, 1916, payable ninety days after date, for $7,550. This last note was given as a renewal of the former note for seven thousand seven hundred dollars and defendant indorsed on said original note of March 16, 1914, the following words: ''Paid August 7, 1916, Exchange National Bank of Long Beach, California.'' On August 22, 1916, defendant sold the said one hundred shares of stock at $85 a share, and received therefor $8,498.10. A contract of pledge, identical with that made on March

16, 1914, is contained in each of said six interest notes as well as in the last note of $7,750. None of these contracts of pledge was ever rescinded or modified, and the shares of stock pledged thereunder remained in the possession of the defendant bank from March 16, 1914, until sold by it on August 22, 1916.

[1] It is not disputed that the said six interest notes were past due on August 22, 1916, when said sale of the stock was made. But it was expressly agreed between the parties that if a single liability was unpaid, the pledgee might sell the *whole* or any part of said securities. The condition therefore existed upon the happening of which the sale of a portion or of the whole of the stock was authorized, and we do not see how it can be held that, by compliance with the terms of the contract, respondent violated said contract, and, therefore, converted the stock, there being no contention that the sale was not fairly conducted or that the proceeds were not applied as provided in said agreement. If the contract between the parties did not authorize the course that was pursued, then we must admit our inability to comprehend the simple language which they seem to have adopted to express their intention.

Appellant attaches importance to section 3000 of the Civil Code, providing: "When performance of the act for which a pledge is given is due, in whole or in part, the pledgee may collect what is due to him by a sale of property pledged subject to the rules and exceptions hereinafter prescribed."

The contention is that thereby the defendant was limited to the right to sell only what was sufficient to pay the debts that had matured; that is, the amount represented by the notes for the interest. But it was competent for the parties by their contract to waive this limitation. The statute provides the rule that would apply in case there was no agreement to the contrary, but there is nothing in the law to preclude parties from agreeing that where property is pledged to secure the payment of several obligations, it may be sold to satisfy all of them, although only a portion has matured. In fact, section 3268 of the Civil Code provides that parties may waive the benefit of any statute in reference to their rights and obligations "unless such waiver would be against public policy." We may add that no con-

46 Cal, App.—13

tention is made that the present case comes within said exception.

Certain decisions are cited by appellant, but, as we read them, they involve a different situation and require no specific attention.

The judgment is affirmed.

Ellison, J., *pro tem.*, and Hart, J., concurred.